UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

## 02-10835MIW

| | | |
|---|---|---|
| REBA CARRUTH, Ph.D. | ) | |
| 408 Whitestone Road | ) | |
| Silver Spring, MD 20901 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | COMPLAINT |
| BOSTON UNIVERSITY | ) | |
| Boston, Massachusetts | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

38987

5-5-02

1.   Plaintiff, through her attorneys, bring this action for damages and other legal

equitable relief from Defendant's violations of the laws alleging as follows:

### JURISDICTION AND VENUE

2.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Section

1332 because Plaintiff is a citizen of Maryland, defendant Boston University is a citizen of

Massachusetts, and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

3.   Venue is proper in this Court pursuant to 28 U.S. C. Section 1391(a) as the

defendant resides in this District.

### PARTIES

4.   Plaintiff  Reba Carruth is a citizen of the United States and a resident of the State

of Maryland.  She was employed by defendant Boston University at its Belgium Campus from

1

approximately 1992 until mid-1993.

     5.    Defendant Boston University is an educational institution headquartered in Boston, Massachusetts, which operates several educational campuses offering courses and degree programs in a number of countries in Europe and elsewhere, including Boston University International Center Brussels ("BUB").

## STATEMENT OF FACTS

     6.    After earning a Doctorate in Sociology from the University of Minnesota, Plaintiff commenced her professional career in 1982 as a government relations intern and an international market analyst with Honeywell Europe in Brussels, Belgium.

     7.    In the course of her employment with Honeywell, Plaintiff became acquainted with officials of Defendant Boston University's Brussels facility in Brussels, which offered degrees in management.

     8.    At the request of an official of Defendant Boston University, Plaintiff in or about 1987 began lecturing on marketing management at Boston University Brussels (BUB).

     9.    Subsequently, in an effort to capitalize on Plaintiff's excellent relationship with the European and American business and academic communities in Belgium, Defendant's officials in Brussels offered to hire her as Director of Boston University Brussels.

     10.    In or about 1992, Plaintiff became Director, BUB and involved the American and Belgium communities in Brussels in support of the University's management and international relations program.

     11.    Plaintiff's Directorship entitled her to continue operating as a management consultant to the Brussels business community, and hence while Director, she maintained and

continued to develop her reputation as a highly-compensated consultant in the Brussels business community.

12.     Subsequent to assuming the position of Director of BUB, Plaintiff became aware of numerous misrepresentations orally and in writing made by the Defendant to Belgium and European students, universities, and hiring companies. While the University's officials and literature hailed the Master of Science Degree in Management issued by BUB as equivalent to a Masters Degree in Business Administration, such that recipients could hold themselves out as having earned such degree from Boston University, these claims were false and students and their employers were consequently misled.

13.     Additionally, students informed Plaintiff directly that they received unwarranted and inflated grades and that the degrees they received were not recognized as a legitimate business degree by numerous Belgium and European companies and organizations. Moreover, upgrades in BUB's library and computer facilities and an American teaching staff long promised to the students and business community were not provided although the increased number of students provided sufficient income to improve the facilities and provide a higher level of instruction. Plaintiff determined that such income was being siphoned off for expenses unrelated to education at BUB itself.

14.     Plaintiff also became aware that the degree awarded specifically by BUB did not meet the American Conference of Schools of Business (ACSB) accreditation standards despite BUB's claims to the contrary. Students were misled that they could earn a Masters Degree in Business (MBA) by attending BUB and then taking a semester of study at the Metropolitan College of Boston University in Boston. This was not true as, on information and belief, BUB

credits were not accepted by the Defendant's School of Management.

15.     In or about late 1992, at a meeting in Paris of the Directors of Boston University's Metropolitan College's programs in various European countries, called to develop a "European Strategy" for Boston University, it became evident to plaintiff that BUB income was being diverted from its educational programs to undisclosed recipients and locations, and that the BUB program was in effect a "shell game" with little value given to the students and with student income diverted to foreign and/or non-educational purposes.

16.     At the Paris meeting, Plaintiff declared that the misrepresentation by BUB was ethically wrong, and that Boston University Brussels was potentially perpetrating a fraud upon students and the Belgium community.  Moreover, she declared Boston University had to give honest value to students, account for funds it received, and live up to its promises to students and to the Belgium and broader European community.

17.     Within days of her Paris statements, Plaintiff was informed by Boston University Provost John Westling (now Boston University President) that she was not "loyal," and that he had directed her discharge from BUB.  He offered Plaintiff approximately $3,000 in consideration for her resignation.

18.     When Plaintiff refused to resign except under terms conforming with Belgium law, she was terminated.  Plaintiff learned of her termination through other business colleagues, faculty and staffs members, to which BUB had publicized it.

19.     After her termination, Plaintiff filed a civil action in Belgium alleging an improper discharge.  Belgium law, under which she was covered, mandated payment of unemployment benefits amounting to one year's salary.

4

20.     In reprisal for her use of the Belgium Court to vindicate her rights and without any proper legal or factual basis whatsoever for its action, Boston University through its BUB affiliate filed criminal charges against plaintiff alleging that she had stolen money, falsified documents, presented fraudulent invoices and improperly used the University's credit card for personal gain, and that she had destroyed the BUB. All such allegations were false, slanderous, libelous and designed to destroy Plaintiff's reputation and to harm her financially.

21.     Subsequent to Plaintiff's discharge and in a further effort to intimidate Plaintiff, Boston University Brussels provided false information to the Brussel's police which resulted in an unlawful search of her apartment in Brussels.

22.     Officials of Boston University also falsely informed community leaders and business associates of Plaintiff that she was "mentally unstable," and had been fired from her position for criminal and unethical conduct.

23.     Because of BUB's false charges, legally and otherwise, against her, Plaintiff was forced to defend herself against criminal charges. Under indictment, Plaintiff was unable to secure employment in Brussels, she defaulted on loans, debtors foreclosed on two Brussels properties owned by her, her consulting contracts were cancelled and she was unable to obtain new contracts.

24.     Boston University employees and officers also directly publicized to Plaintiff's debtors the criminal charges against her. While Plaintiff borrowed funds to maintain herself, she could not maintain her real properties. Further, the allegations of mental instability and alleged criminal activities, made it virtually impossible for plaintiff to find consulting work relating to Brussels and the European Community with European-based organizations even outside

5

Brussels.

25.      Without income or assets, most of which were linked to the properties foreclosed on, Plaintiff was forced to return to the United States in late 1993, ultimately procuring employment in the District of Columbia.

26.      Even following her departure, however, Boston University continued its assault on her through prosecution of its frivolous claims.  Recently, on a trip to Belgium with colleagues to attend a conference, Plaintiff was detained by Brussel's police based on the charge that she was a fugitive, a charge made by the Defendant which was patently false.

27.      In 1999, the trial court in Brussels found Plaintiff not guilty on all charges brought against her by Defendant Boston University, and dismissed each of them as lacking in merit.

### COUNT I

#### (Malicious Prosecution)

28.      The allegations in paragraphs 1-27 are hereby realleged and incorporated herein.

29.      Plaintiff has a right to be free from malicious prosecution, and Boston University violated this right with full knowledge that the charges it made against her were false.  Defendant brought the false charges to the Brussels police, resulting in Plaintiff's criminal prosecution.  She was required to stand trial.  Approximately six years later, Plaintiff was completely vindicated and the charges proved false.  Due solely to the allegations made by the Defendant Boston University and which were made in bad faith, Plaintiff was required to defend herself from false charges, causing her to expend funds in her defense and to suffer severe emotional stress. Charged as a criminal, Plaintiff lost her business and her real properties and suffered major economic loss.

## COUNT II

### (Defamation)

30.    The allegations in paragraphs 1-29 are hereby realleged and incorporated herein.

31.    With intent to injure Plaintiff and with full knowledge that the charges were false, Defendant Boston University in writing and orally published that plaintiff was not "mentally stable," that she had defrauded the University and destroyed its educational program, and that she was a criminal having been charged as such by the Brussels police.  As a result of this defamation, Plaintiff's outstanding reputation was sullied beyond repair.  She was unable to continue her consulting business, which depended on her good reputation and character, nor was she able to seek alternate employment in Brussels or other European locales.  She was also unable to negotiate alternate payment arrangements with her creditors.  Plaintiff therefore suffered major economic loss and suffered severe emotional stress resulting from the defamation of her character and reputation.

## COUNT III

### (Interference with Contractual Relations)

32.    The allegations in paragraphs 1 through 31 are hereby realleged and incorporated herein.

33.    Being aware of Plaintiff's business interests in Belgium and elsewhere in Europe, Boston University knowingly informed Plaintiff's creditors and potential consulting costumers that she was not trustworthy, that she had taken goods not belonging to her from the University, and that criminal charges had been brought against her.  Plaintiff had contractual relations with banks, other creditors and with her business clients.  Defendant Boston University made such

false allegations involving Plaintiff, with the intent and effect that such allegations would result in the termination of Plaintiffs' contractual relationships by banks and other creditors, and with past and potential business consulting customers. As a result of Defendant's interference, Plaintiff suffered major economic loss, including foreclosure on her properties, with loss of principal, and destruction of her business. Also as a result of Defendant's interference, Plaintiff suffered severe emotional distress.

COUNT IV

(Intentional Infliction of Emotional Distress)

34.     The allegations in paragraphs 1 through 33 are hereby realleged and incorporated herein.

35.     The actions of Defendant Boston University as described in Counts I, II and II above were willful and deliberate and designed to cause emotional and psychological stress to Plaintiff in order to cause her to desist from her suit against Defendant -- which suit sought lawful compensation for wages due her as a result of her termination. Defendant made baseless criminal charges against her, defamed her reputation without cause, and interfered with her contractual relationships. All such actions were severe and outrageous, designed to be harmful to Plaintiff and to cause her severe emotional stress, and Plaintiff did suffer such emotional injury and distress because of Defendant's actions.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendant Boston University as follows:

1.     Enter judgment in favor of Plaintiff for one million dollars ($1,000,000) to

8

remedy the economic loss suffered by her as a result of Defendant Boston

University's actions;

2.     Enter judgment in favor of Plaintiff for ten million dollars ($10,000,000) to

remedy the nonpecuniary damages suffered by Plaintiff, and to remedy the severe

emotional and psychological damage inflicted by Defendant on her; and

3.     Enter judgment in favor of Plaintiff for such other relief as this Court deems just

or equitable.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury with regard to all issues of fact, including the

amount of damages.

*Reba Carusch, Ph.D.*