# United States District Court
# District of Massachusetts

REBA CARRUTH,
     Plaintiff,

    v.                        CIVIL ACTION NO. 02-10835-RBC[1]

BOSTON UNIVERSITY,
     Defendant.

## *MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  (#13)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On May 9, 2002, plaintiff Reba Carruth (hereinafter "Carruth") filed a

four-count complaint against defendant Boston University[2] (hereinafter "BU").

---

[1]
     With the parties' consent this case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment.

[2]
     Although the defendant states that its proper name is Trustees of Boston University (Answer #5, ¶5), the Court is obliged to use the appellation in the complaint.

Carruth was formerly employed by BU as the Director at its facility in Brussels, Belgium.  Her termination from that position is the genesis of her claims.

Count I of the complaint is a claim for malicious prosecution.  Count II is a claim for defamation. The plaintiff alleges in these counts that BU filed criminal charges against her in Belgium in order to destroy her reputation and spread false allegations about her mental stability among her colleagues and business associates.  Carruth contends that BU interfered with her contractual relations in Count III.  Lastly in Count IV the plaintiff alleges that BU intentionally inflicted emotional distress upon her.  Needless to say, BU denies Carruth's claims.

In accordance with a June 17, 2003 Scheduling Order (#12), BU filed a motion for summary judgment (#13) together with a memorandum in support (#14), a statement of undisputed facts (#15) and an appendix of exhibits (#16) on August 28, 2003.  Following an extension of time, Carruth submitted a response to the dispositive motion (#20) and thereafter an additional attachment on October 6 and 10, 2003 respectively.  On October 7, 2003, the defendant filed its reply brief.  With the record now complete, the summary judgment motion is in a posture to be resolved.

## II.  The Facts

In large measure this recitation of facts is gleaned from the defendant's statement of undisputed facts (#15) and the exhibits thereto (#16).  Carruth did not file any pleading challenging BU's statement of undisputed facts.  In these circumstances, under Local Rule 56.1, the  "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."

On October 23, 1992, Carruth and BU entered into a written contract for employment. (#15, ¶A1; #16, Exh. A, Exh. F at 20-1)  According to the terms of that employment agreement, BU agreed to hire Carruth to "serve as Director of the Boston University Graduate Center in Brussels, Belgium" (hereinafter "BUB") from November 1, 1992 through October 31, 1993, subject to automatic annual renewal. (#15, ¶¶A1, 6; #16, Exh. A)  As the Director of BUB, the plaintiff was to undertake significant executive management responsibility including "administrative, academic and financial responsibilities for the planning and operation of the program in Brussels." (#15 ¶A2; #16, Exh. A)  The job was a full time position:

> During the period of employment, the Director agrees to devote full working time to the position, and will not advise or assist entities, institutions, or individuals in competition with the University, and will not undertake or accept any other employment, consultancy work, or undertaking <u>without the prior express written consent of the Vice President for Overseas Programs.</u>

Statement of Undisputed Facts #15 ¶A2; Exhibits #16, Exh. A (emphasis in original).

Carruth was to be paid $45,000 as a yearly salary together with an annual station allowance of $20,925. (#15 ¶A4; #16, Exh. A)

During her first year as Director of BUB, certain issues arose with respect to aspects of Carruth's job performance. (#15 ¶B7; #16, Exh. B)  By the fall of 1993, Romualdas Skvarcius ("Skvarcius"), Dean of BU's Metropolitan College[3], was in receipt of information which, if true, constituted grounds for Carruth's termination. (#15 ¶B7; #16, Exh. C¶4)  Specifically, Skvarcius had been told that the plaintiff was "engaged in paid consulting and teaching for other companies and institutions, in dereliction of her responsibilities to her full-time employment with" BUB and, further, that she had rented space in a building that she owned to BUB without proper approval from her supervisors.

---

[3]

As Dean of the Metropolitan College, Skvarcius was "responsible for the management of five International Graduate Centers in Europe", including BUB. (#16, Exh. C ¶1)

(#15, ¶B7; #16 Exh. C ¶¶5, 6)   Skvarcius directed Robert Lamb ("Lamb"), BU's Vice President for Overseas Programs, to meet with Carruth in Brussels to discuss the allegations made against her. (#16, Exh. C ¶¶7, 8)

Lamb in fact met with the plaintiff in Belgium and it was confirmed that the information given to Skvarcius was correct.  (#15 ¶B7; #16, Exh. C ¶¶8, 9)  After Lamb and Skvarcius consulted on the matter, by letter dated October 29, 1993, BU advised Carruth that she was being terminated from her position "on urgent grounds" effective immediately. (#15 ¶8; #16, Exh. D, Exh. F at 13)   In a follow-up letter dated November 2, 1993, Lamb detailed three reasons why Carruth was fired, each of which, from BU's perspective, provided sufficient grounds for termination: 1. Lamb had verified that Carruth was teaching courses at competing Universities in the Brussels area during normal business hours and at night without approval from BU[4];  2.  Carruth had confirmed to Lamb that she had been engaged in an outside paid consulting job in Germany from Monday October 25, 1993 through Wednesday October 27, 1993 without seeking prior approval and BU considered that time to be an

---

[4] Carruth admitted this at her deposition.  *See* #16, Exh. F at 23-4.

unjustified absence[5]; and 3. Lamb had verified that Carruth had leased her personal property to BU without proper disclosure[6]. (#15, ¶B9; #16, Exh. E, Exh. F at 22)

Subsequent to the plaintiff's dismissal, BU conducted an internal audit of BUB covering the term while Carruth had served as Director.[7] (#15 ¶D13; #16, Exh. I)  The audit revealed irregularities, including that the plaintiff had used the credit card issued to her by BU to pay personal expenses unrelated to BU business (#15 ¶D15; #16, Exh. I at 8-9) and that she repeatedly billed BU "for thousands of dollars worth of 'Marketing Support Services' on behalf of her wholly owned company, RACMUC", but that there was a dearth of evidence to suggest that any such services were provided. (#15, ¶¶D14, 15; #16, Exh. I at 5-6, 8-9)  Moreover, BU

> discovered that Carruth instructed her subordinate, Myriam Struyven, to provide Carruth additional compensation in exchange for teaching courses she was contractually obligated to teach.  Furthermore,

---

[5]

Carruth admitted at her deposition that she engaged in outside paid consulting jobs while she was employed as the Director of BUB. *See* #16, Exh. F at 24.

[6]

Carruth admitted at her deposition that no one in authority had signed the lease or authorized anyone else in writing to sign the lease on behalf of BU. *See* #16, Exh. F at 24-7.

[7]

The review was conducted by the Office of Internal Audit which "functions as an independent appraisal activity reviewing all financial and operational activities by" BU. (#16, Exh. I ¶2)

> Carruth instructed Struyven to grant her additional
> compensation for teaching courses beyond the normal
> administrative teaching load, in clear violation of
> University policy.

Statement of Undisputed Facts #15 ¶D16; Exhibits #16, Exh. I at 7-8, Exh. J.

On December 13, 1993 Carruth commenced a lawsuit against BU in the Brussels Labor Court. (#15 ¶E17; Response To Defendant's Motion #20, Exh. 4)   BU filed counterclaims against Carruth in the Brussels Labor Court and thereafter on February 22, 1994, filed a "Complaint with declaration of civil party in the name of Boston University Brussels" in the Court of First Instance in Brussels. (#15 ¶E17; #16, Exh. K; #20, Exh. 4)   In the Belgium legal system, the filing of the latter complaint with declaration of civil party was essentially the institution of criminal charges by BU against Carruth. (#16, Exh. L ¶5)

An experienced Brussels lawyer has summarized the Belgium system as follows:

> In sum, before a criminal case is finally presided
> over by the actual Criminal Court, the case has been
> already assessed by three separate judicial authorities
> who are functioning in an impartial and objective
> manner and who assess the fact-finding of the case
> both against and in favor of the accused.   The
> Investigating Judge carries out a first impartial

> assessment of the evidence and fact-finding of the case.   The public prosecutor undertakes a second objective and impartial assessment of the merits of the case.   The Judicial Council constitutes a third level of assessment and only decides to remand the case to the Criminal Court if it is convinced that the facts at stake constitute a crime and if it is convinced that the defendant is guilty of the crime.

Exhibits #16, Exh. L ¶9.

BU's case against Carruth was assessed at all three levels and then went to trial on the criminal charges in the Brussels Criminal Court where she was ultimately acquitted. (#15, ¶E17; Exh. 16, Exh. M; #20, Exh. 3)

### III. The Summary Judgment Standard

Summary judgment is intended "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,* 332 F.3d 6, 12 (1 Cir., 2003) (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1 Cir., 1990) (quoting Fed. R. Civ. P. 56 Advisory Committee's note)).   The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf, Co.,* 335 F.3d 16, 19 (1 Cir., 2003).   After the moving party has met its burden, "the

burden shifts to the summary judgment target [the non-moving party] to demonstrate that a trial-worthy issue exists." *Mulvihill,* 335 F.3d at 19 (citing *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1 Cir., 2000)).

When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

In making this assessment, the Court must "scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor." *Mulvihill,* 335 F.3d at 19 (citing *Morris v. Gov't Dev. Bank,* 27 F.3d 746, 748 (1 Cir., 1994)); *see also Podiatrist Ass'n, Inc.,* 332 F.3d at 13; *Pure Distributors, Inc. v. Baker,* 285 F.3d 150, 152 (1 Cir., 2002); *New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9, 19 (1 Cir., 2002) (citing *Dynamic Image Techs., Inc. v. United States,* 221 F.3d 34, 39 (1 Cir., 2000)); *Kearney v. Town of Wareham,* 316 F.3d 18, 22 (1 Cir., 2002).

Despite this "notoriously liberal" standard, *Mulvihill,* 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney,* 316 F.3d at 22. A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, a genuine issue of material fact cannot merely rest upon "spongy rhetoric" but rather requires substantive proof. *Mulvihill,* 335 F.3d at 19 (citing *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1 Cir., 1991) (explaining that "[g]enuine issues of material fact are not the stuff of an opposing party's dreams")).

In deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Kearney,* 316 F.3d at 22*; Suarez,* 229 F.3d at 53 (citing *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1 Cir., 1995)). In circumstances where submitting the issue in dispute to the jury amounts to "nothing more than an invitation to speculate," summary judgment is appropriate. *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 9 (1 Cir., 2000) (quoting *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 467-68 (1 Cir., 1996)). In weighing whether a

factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248; *Kearney,* 316 F.3d at 22.

The focus at the summary judgment phase "should be on the ultimate issue: whether, viewing the aggregate package of proof offered by plaintiff and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact." *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532 (1 Cir., 2002) (citing *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430-31 (1 Cir., 2000)); *see also Leahy v. Raytheon, Co.,* 315 F.3d 11 (1 Cir., 2002); *Suarez,* 229 F.3d at 53. The party opposing summary judgment may not merely rest upon the statements put forth in its own pleadings. *See Gillen v. Fallon Ambulance Service, Inc.,* 283 F.3d 11, 26 (1 Cir., 2002) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4-5 (1 Cir., 1994) (a party objecting to summary judgment fails to put forth a genuine issue of material fact merely by filing an affidavit contradicting unambiguous answers contained in a prior deposition)). Instead, Rule 56(c):

> mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against

11

a party who fails to make a showing sufficient to
establish the existence of an element essential to the
party's case, and on which the party will bear the
burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

*IV. Discussion*

In Count I of her complaint Carruth contends that BU, in bad faith,

brought false charges against her in the Brussels criminal court.  The plaintiff

claims that although she was ultimately vindicated after trial, in having to

defend herself against the criminal charges she suffered severe emotional

distress and economic loss.

The law regarding malicious prosecution is clear:

> To prevail on his claim for malicious prosecution, [the
> plaintiff] was required to show that he suffered
> damage because [the defendant] instituted criminal
> proceedings against him with malice and without
> probable cause, and that the proceedings terminated
> in his favor. *See Beecy v. Pucciarelli*, 387 Mass. 589,
> 593, 441 N.E.2d 1035 (1982).
>                          *****
>      To show malice, the burden was on [the
> plaintiff] to demonstrate that [the defendant] knew
> there was no probable cause for the prosecution, and
> that [the defendant] acted with an improper motive.
> *Beecy v. Pucciarelli*, *supra*. Sometimes the lack of
> probable cause is so obvious that an inference of
> malice is warranted. *Id*. at 594, 441 N.E.2d 1035. *See*

12

> *Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532, 537, 246
> N.E.2d 642 (1969); *Pihl v. Morris*, 319 Mass. 577,
> 580, 66 N.E.2d 804 (1946). But, even if there was no
> probable cause in this case, a fact that we do not
> intimate, the evidence did not warrant a finding that
> the lack of probable cause was so obvious that the
> defendant more likely than not knew there was no
> probable cause.

*Foley v. Polaroid Corp.*, 400 Mass. 82, 100-01, 508 N.E.2d 72, 82-3 (1987).

BU asserts, *inter alia*, that Carruth's claim for malicious prosecution must fail because she cannot prove that there was no probable cause for the charges made in Brussels.

The defendant has offered the audit undertaken after the plaintiff was terminated to evidence financial irregularities at BUB under Carruth's directorship. (#16, Exh. I)  In addition, an overview of the Belgian criminal system has been provided by Johan Scheers ("Scheers"), a member of the Brussels bar with "18 years of extensive experience as [a] criminal attorney." (#16, Exh. L ¶2)  Quoting at some length, Scheers explains the process:

> 5.     In or about February, 1994, Boston University
> filed a complaint with declaration of civil party with
> the Investigating Judge at the Court of First Instance
> of Brussels.  In Belgium, once a complaint has been so
> filed with the Investigating Judge, the Investigating
> Judge acts *ex officio*: as from that moment, he
> becomes the master of the investigation.  Pursuant to

Art. 56, §1, al. 1 of the Belgian Code of Criminal Procedure ("the Code"), the Investigating Judge "is responsible for the instruction procedure and carries out his investigations both against and in favor of the defendant."...The Investigating Judge decides to formally inculpate the defendant only if he finds serious indications of guilt (Art. 61 bis, al.1), which was what happened in the Carruth case.   The Investigating Judge must then report the results of his investigation to the public prosecutor (Art. 127, al 1).

6.     The public prosecutor must decide (1) to instruct the Investigating Judge with additional investigation tasks or (2) to bring the case before the Judicial Council.  In the case of Boston University's complaint against Carruth, the public prosecutor decided that the Investigating Judge had provided sufficient evidence of guilt against Carruth to prosecute and thus asked the Judicial Council to forward the case to the Criminal Court.

7.     Pursuant to Art. 128 of the Code, the Judicial Council must decide to dismiss all of the charges against the defendant if it finds no indications of guilt against the defendant or if it finds that the facts at stake do not constitute a crime.  If the Judicial Council finds that there is a prima facie case against the accused, the Judicial Council decides that the accused will be committed for trial to the Criminal Court on the basis of Art. 130 of the Code.

8.     In the present case, the Judicial Council decided that a criminal trial would be conducted.  Carruth had the opportunity to appear before the Judicial Council with her attorney to present her view of the facts but decided not to appear before the Judicial Council.

14

> Although Dr. Carruth's lawyer was informed of the
> hearing date of the Judicial Council's hearing he was
> not present at this hearing to represent Dr. Carruth.

Exhibits #16, Exh. L ¶¶5-8.

Thus, this affidavit demonstrates that probable cause or a prima facie case against Carruth was found to exist at three levels of the Belgian judiciary. That is not to say that these findings by judicial officers are conclusive proof that there was probable cause. *Willis v. Gurry,* 331 Mass. 19, 22, 116 N.E.2d 689, 690 (1954). But the evidence in the summary judgment record in the instant case is devoid of any evidence that there was not probable cause. That Carruth was ultimately found not guilty simply does not undercut the existence of sufficient indicia of guilt to proceed against her in the first instance.

Carruth has proffered nothing to counter BU's evidence that there was probable cause other than her acquittal. This is insufficient, and, consequently, Carruth's malicious prosecution claim must fail.

The plaintiff's remaining claims are subject to a three-year statute of limitations. *See* Mass. Gen. L. c. 260 §2A ("Except as otherwise provided, actions of tort...shall be commenced only within three years next after the

cause of action accrues.")  In her defamation claim, Count II of the complaint,

Carruth alleges that

> [w]ith intent to injure Plaintiff and with full knowledge that the charges were false, Defendant Boston University in writing and orally published that plaintiff was not 'mentally stable', that she defrauded the University and destroyed its educational program, and that she was a criminal having been charged as such by the Brussels police.

Complaint #1 ¶31.

As earlier noted, BU filed its complaint with declaration of civil party against

Carruth alleging "embezzlement of funds, theft, fraud and/or abuse of trust"

in the Court of First Instance in Brussels on or about February 22, 1994. (#16,

Exh. K)   At her deposition, the plaintiff testified that the "diffusion of

information about her", i.e., the news that she had been fired, that she had

stolen money, that she was mentally unstable, all occurred in the aftermath of

her termination in the fall of 1993. (#16, Exh. F at 77-80)  When asked "[b]ut

all of this stuff under the heading of defamation here occurred in the

immediate aftermath of your termination, correct?", Carruth responded "[i]t

started then." (#16, Exh. F at 84)  Thus, based upon the record evidence, the

conduct about which Carruth complains as serving the basis for her

defamation claims took place in the latter part of 1993 after she had been

terminated as Director into 1994 when the charges against her were filed.

> The general rule in libel and defamation cases is that the cause of action accrues, and the statutory period begins to run, on the date of publication. *Flynn v. Associated Press*, 401 Mass. 776, 519 N.E.2d 1304, 1307 (1988).
>
> *****
>
> Under Massachusetts law, the discovery rule suspends the running of the statute of limitations where a cause of action is based on an "inherently unknowable" wrong; the statute only starts to run when "the harm becomes known, or in the exercise of reasonable diligence should have become known, to the injured party." *Catrone v. Thoroughbred Racing Ass'n*, 929 F.2d 881, 885 (1st Cir.1991). A plaintiff need not have notice of "every fact which must eventually be proved in support of the claim.... Rather, notice is simply knowledge that an injury has occurred." *Flynn*, 519 N.E.2d at 1307 (internal quotation marks omitted).

*Collins v. Nuzzo*, 244 F.3d 246, 253 (1 Cir., 2001); *see also Vondra v. Crown Publishing*, 2002 WL 31379948 *4 (Mass. Super.).

Based upon Carruth's deposition testimony, she plainly was aware of the

activities about which she now complains at the time that they occurred, that

being late 1993 into 1994.  Since this instant case was not filed until 2002, it

is beyond cavil that it was commenced well outside the three-year limitation

period.

The next claim, Count III, is one for interference with contractual relations. Carruth alleges that when BU asserted that she had stolen from the university and brought criminal charges against her in Brussels, BU intended to and did interfere with her relations with creditors and clients.

> A claim for intentional interference with contractual relations is one sounding in tort. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20, 21 (Mass.1990). As such, it is subject to a three-year statute of limitations under Massachusetts law. Mass. Gen. Laws Ann. ch. 260, § 2A (1992). The limitations period generally begins to run at the time of the plaintiff's injury. *Quinn v. Walsh*, 49 Mass.App.Ct. 696, 732 N.E.2d 330, 332 (Mass.App.Ct.2000). Since we take this case at summary judgment, [the plaintiff] bears the burden of producing competent evidence demonstrating that its claim is timely. *Kelly v. Marcantonio*, 187 F.3d 192, 198 (lst Cir.1999).

*Pure Distributors, Inc. v. Baker*, 285 F.3d 150, 154-5 (1 Cir., 2002)(footnote omitted).

The undisputed evidence shows that BU brought charges against Carruth on February 22, 1994. (#16, Exh. K) The plaintiff's injury, if any, would have taken place at that time or shortly thereafter. Carruth has offered nothing to suggest otherwise, and she bears the burden of proving the timeliness of her claim. In short, this claim is barred by the statute of limitations.

In the final count of the complaint, Count IV, the plaintiff asserts that in

making baseless charges against her, defaming her, and interfering with her contractual relations, BU intended to inflict emotional distress upon her. "A three-year limitation period applies to the plaintiff's claims in tort for intentional infliction of emotional distress. G.L. c. 260, §2A (1986 ed.)." *Mellinger v. Town of West Springfield*, 401 Mass. 188, 191, 515 N.E.2d 584, 586 (1987); *see also Quinn v. Walsh*, 49 Mass. App. Ct. 696, 697, 732 N.E.2d 330, 332 (2000).

> The time when a cause of action accrues has not been defined by statute but has been the subject of judicial interpretation. *See Riley v. Presnell*, 409 Mass. 239, 243, 565 N.E.2d 780 (1991). The general rule is that a cause of action in tort accrues at the time the plaintiff is injured. *Ibid. See Joseph A. Fortin Constr., Inc. v. Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442, 466 N.E.2d 514 (1984); *Frank Cooke, Inc., v. Hurwitz*, 10 Mass.App.Ct. 99, 109, 406 N.E.2d 678 (1980). We have said that, where the claim arises from the intentional infliction of emotional distress, the injury occurs on the date a plaintiff first experiences anxiety or distress that is the intended result of the defendant's conduct. *Pagliuca v. Boston*, 35 Mass.App.Ct. 820, 824, 626 N.E.2d 625 (1994). We have narrowed this rule to provide that "[w]hen an injury ... becomes manifest, the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known." *Id.* at 824-825, 626 N.E.2d 625, quoting from *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App.Ct. 645, 649, 461 N.E.2d 256

(1984).

*Quinn*, 49 Mass. App. Ct. at 697-8, 732 N.E.2d at 332.

Once again, as Carruth's deposition testimony makes clear, she was aware of the defendant's actions and was "injured" by them at or around the time they occurred, that being late 1993 into 1994, at least eight years before this litigation was commenced. The plaintiff's claim is time-barred.

*V. Conclusion*

For the reasons stated, it is ORDERED that Defendant's Motion For Summary Judgment (#16) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.

*/s/ Robert B. Collings*
_____ROBERT B. COLLINGS
United States Magistrate Judge

Date: March 22, 2004.